NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Respondent*,

*v.*

CYNTHIA JO ANN WATSON, *Petitioner*.

No. 1 CA-CR 25-0530 PRPC

FILED 07-06-2026

---

Petition for Review from the Superior Court in Maricopa County
No. CR2020-137609-001, CR2022-002635-001
The Honorable Margaret LaBianca, Judge
The Honorable Scott Minder, Judge
The Honorable Adam D. Driggs, Judge

**REVIEW GRANTED; RELIEF DENIED**

---

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Douglas Gerlach
*Counsel for Respondent*

Cynthia Jo Ann Watson, Goodyear
*Petitioner*

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge Brian Y. Furuya joined.

**M O R S E**, Judge:

**¶1**         Cynthia Jo Ann Watson ("Watson") seeks review of the court's dismissal of her post-conviction relief ("PCR") petition filed under Arizona Rule of Criminal Procedure ("Rule") 33.1.  We grant review but deny relief.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**         Watson's PCR involves two criminal cases: (1) Maricopa County Cause No. CR2020-137609-001 ("2020 Case"), and (2) Maricopa County Cause No. CR 2022-002635-001 ("2022 Case").

**¶3**         In the 2020 Case, a grand jury indicted Watson for Fraudulent Schemes and Artifices, Theft, Aggravated Taking Identity of Another, and Theft of Means of Transportation.  The court granted Watson's request to proceed pro per.  After Watson filed 22 motions, many incomprehensible, the State requested a Rule 11 examination of Watson.  After the appointed experts submitted their examination reports, the court determined that Watson was competent to proceed.

**¶4**         In September 2022, at a pretrial conference, Watson arrived late and repeatedly interrupted the court.  The State orally moved to have the court revoke Watson's pro per status.  The court agreed, finding that Watson "has not demonstrated the ability to proceed Pro Per" and ordered the appointment of counsel to represent her.

**¶5**         After newly appointed counsel dealt with Watson for a time, he moved for a Rule 11 examination of Watson. The court appointed an expert, who found that Watson was competent to proceed and the matter continued.

**¶6**         Eventually, in November 2023, Watson entered into a plea agreement.  Under its terms, Watson pleaded guilty to Fraudulent Schemes and Artifices, Taking the Identity of Another, Theft of Means of Transportation, and Forgery of a Credit Card.  The plea agreement limited Watson's exposure to no more than four years in the Department of

Corrections, with any sentence concurrent with the charges in the 2022 Case. In return for the guilty pleas, the State agreed to dismiss two of the charges and the sentencing enhancements. After entering into the plea agreement, Watson moved to have her right to represent herself restored. The court denied her motion finding she could not represent herself given her history in doing so. The court sentenced Watson consistent with the plea agreement.

¶7 In the 2022 Case, a state grand jury indicted Watson on six counts of Fraudulent Schemes and Artifices, six counts of Forgery, and one count of Taking the Identity of Another. Watson's counsel requested, and the court granted, a Rule 11 examination for Watson. Two more experts examined Watson, and the court found Watson competent. Watson moved to change her counsel and requested to proceed pro per. The court denied her motion.

¶8 Watson entered into a plea agreement with the State. Under the agreement, Watson pleaded guilty to one count of Fraudulent Schemes and Artifices and two counts of Forgery. In return, the State dismissed the remaining counts and the sentencing allegations. The parties stipulated that for the Fraudulent Scheme charge, Watson would be sentenced to between 7.5 and 10 years' incarceration. For the Forgery charges, Watson would be placed on probation upon her release from prison. After entering into the plea agreement, Watson moved to waive counsel and to represent herself. The court denied her motion based in part on her conduct in the 2020 Case. The court sentenced Watson according to the plea agreement and sentenced her to 7.5 years in prison.

¶9 Watson petitioned pro per for PCR. The petitions were nearly incomprehensible, but the court tried to address her claims. One of the claims identified by the court was that Watson challenged "the [c]ourt's withdrawal of its acceptance of Ms. Watson's waiver of counsel and determination she could represent herself." The court rejected the claim because it was waived by entering into the plea agreement and, if not waived, it was justified based on her "disruption and the [c]ourt's need to conduct proceedings in an efficient and orderly manner." The court dismissed the PCR petition.

¶10 Watson petitioned for review and we have jurisdiction under A.R.S. §§ 13-4031 and -4239 and Rule 33.16.

**DISCUSSION**

**¶11**         "This court will not disturb a superior court's ruling on a petition for [PCR] absent an abuse of discretion." *State v. Reed*, 252 Ariz. 236, 238, ¶ 6 (App. 2021). When the court commits an error of law or fails to investigate the facts supporting its decision adequately, it constitutes an abuse of discretion. *State v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017). But we review the court's legal conclusions de novo, and Watson bears the burden of proving the court abused its discretion by denying the PCR petition. *See Reed*, 252 Ariz. at 238, ¶ 6.

**¶12**         In her petition for review, Watson raises one claim—did the court improperly deny her Sixth Amendment right to represent herself? Thus, any other claim addressed by the court in dismissing the PCR petition is waived. Ariz. R. Crim. Pro. 33.16(c)(4) ("A party's failure to raise any issue that could be raised in the petition for review or cross-petition for review constitutes a waiver of appellate review of that issue.").

**I.       Self-Representation Before Plea Agreement.**

**¶13**         Watson challenges the court's decision to revoke her self-representation status and to appoint counsel. In the 2020 Case, the court determined that, based on her obstructionist conduct, she had forfeited her right to self-representation. In the 2022 Case, the court similarly denied her motion to proceed pro per. The hearings at which the court made these determinations were recorded. At later hearings with counsel, Watson's disruptive and disorderly behavior was noted by the court. All hearings were recorded, but transcripts from the hearings are not in this Court's record.

**¶14**         After the pleas were entered, Watson moved for self-representation in both cases. The court denied Watson's motions based on her conduct in those past court proceedings.

**¶15**         "It is the defendant's duty, as the party seeking relief, to prepare the record in such a manner as to allow the appellate court to pass upon the questions raised on appeal." *State v. Mendoza*, 181 Ariz. 472, 474 (App. 1995). Thus, Watson must ensure that the record contains all necessary transcripts. *Mendoza,* 181 Ariz. 472, 474. And "[w]hen matters are not included in the record on appeal, the missing portion of the record is presumed to support the decision of the trial court." *Id.*

**¶16**         For PCR review, the Rules provide the mechanism to ensure the reviewing court can pass upon the questions raised in a review petition.

Rule 32.16(b) reads that "[n]o later than 3 days after a petition or cross-petition for review is filed, the petitioner or cross-petitioner *must* file with the trial court a 'notice of filing.'" (Emphasis added).  The mandatory notice should include the items the clerk must transmit to the appellate court under Rule 32.16(j).  If a defendant wishes to include transcripts in the review record, he or she must designate the transcripts in the mandatory notice of filing.  Watson's request for transcripts did not include the proceedings that she now challenges.  Thus, we must presume that the missing transcripts would support the court's assessment of Watson's conduct and the court's finding that her conduct warranted revoking her self-representation status in the 2020 Case and denying her request to proceed pro per in the 2022 Case before the entry of the plea agreements. *See Mendoza*, 181 Ariz. at 474; *see also State v. Martin*, 102 Ariz. 142, 146 (1967).

## II.    Self-Representation at Sentencing.

**¶17**        A voluntarily entered plea agreement waives all non-jurisdictional defects before the entry of the plea, including the "deprivations of constitutional rights." *State v. Flores*, 218 Ariz. 407, 409–10, ¶ 6 (App. 2008); *Tollett v. Henderson,* 411 U.S. 258, 267 (1973) (explaining a guilty plea represents a break in the chain of events which has preceded it in the criminal process and a criminal defendant may not later raise independent claims relating to deprivation of constitutional rights that antedated the plea); *State v. Quick*, 177 Ariz. 314, 316 (App. 1993) (holding that a defendant who pleads guilty waives all non-jurisdictional defects and defenses, including constitutional claims, other than "matters directly relating to the entry of a guilty plea").  Thus, as much as Watson tries to raise error in the court's revocation of her self-representation status in the 2020 Case, she waived the claim by entering into the plea agreement.  But by executing the agreement, Watson did not waive her request to proceed pro per at sentencing.  *See State v. Dunbar,* 257 Ariz. 421, 426, ¶ 13 (2024) (explaining defendant's withdrawal of self-representation status at trial did not preclude him from reasserting his right at sentencing).

**¶18**        A court's decision to revoke a defendant's self-representation is reviewed for an abuse of discretion. *State v. Gomez*, 231 Ariz. 219, 222, ¶ 8 (2012).  "The right to counsel under both the United States and Arizona Constitutions includes an accused's right to proceed without counsel and represent himself," *State v. Lamar*, 205 Ariz. 431, 435 ¶ 22 (2003), "but only so long as the defendant 'is able and willing to abide by the rules of procedure and courtroom protocol.'"  *State v. Whalen,* 192 Ariz. 103, 106 (App. 1997) (quoting *McKaskle v. Wiggins,* 465 U.S. 168, 173 (1984)).  Thus, a

court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). A self-represented defendant must not only respect the dignity of the courtroom but also "comply with relevant rules of procedural and substantive law." *Id.* Thus, a court may revoke self-representation status for serious violations of court orders. *Gomez*, 231 Ariz. at 223–24, ¶ 15–16 (holding that serious and obstructionist misconduct includes when the conduct signifies that "continued self-representation would undermine the court's authority and ability to conduct the proceeding in an efficient and orderly manner."). But an erroneous failure to accord a competent defendant his or her properly asserted right to self-representation in a criminal case "is structural error requiring reversal without a showing of prejudice." *State v. McLemore*, 230 Ariz. 571, 575–76, ¶ 15 (App. 2012).

**¶19** Before a court revokes the right to self-representation, it must offer "clear, unambiguous, and timely warnings." *Whalen*, 192 Ariz. at 108. And a reviewing court reviews the record as it existed when the court revoked the defendant's constitutional right. *State v. Underwood*, 255 Ariz. 86, 89, ¶ 16 (App. 2023); *see also Washington v. Boughton*, 884 F.3d 692, 705 (7th Cir. 2018) (explaining a court's "constitutionally infirm decision" to deny a defendant's request to self-represent cannot be "rehabilitate[d] . . . by pointing to [the defendant's] conduct after the decision was made"). Because we lack a record and must presume the court complied with its responsibility in revoking Watson's self-representation, we review the post-plea record to determine whether the court abused its discretion by refusing to reinstate Watson to pro per status for sentencing.

**¶20** Once a court has properly revoked self-representation because of obstructionist behavior, it need not reinstate that right, even if the defendant later attempts to make amends or promises better behavior. "[W]hen a defendant has waived his right to self-representation, the trial court may exercise its discretion in deciding whether to permit or deny a subsequent attempt to proceed pro per." *State v. Boggs*, 218 Ariz. 325, 338, ¶ 61 (2008). Courts possess broad discretion in managing defendants who seek to represent themselves. This principle applies with particular force when a defendant has already demonstrated an inability to comply with court rules and orders. *See Gomez*, 231 Ariz. at 223–24, ¶ 16.

**¶21** Watson argues that because she was found "competent" by the examining Rule 11 experts, the court had to allow her to self-represent at sentencing. She is mistaken. As noted above, Watson lost her self-representation status because of her obstructionist behavior, not for being

incompetent. Even after she was appointed counsel, the court repeatedly noted her inappropriate conduct. The court did not abuse its discretion by refusing to reinstate that status.

## CONCLUSION

¶22        We grant review but deny relief.

